IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 1 1 2019

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| JOEMAR JACKSON, | § |
| | § |
| Petitioner, | § |
| | § |
| v. | § |
| | § |
| LORIE DAVIS, Director, | § |
| Texas Department of Criminal | § |
| Justice, Correctional | § |
| Institutions Division, | § |
| | § |
| Respondent. | § |

No. 4:17-CV-844-A

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed by petitioner, Joemar Jackson, a state
prisoner confined in the Correctional Institutions Division of
the Texas Department of Criminal Justice (TDCJ), against Lorie
Davis, director of TDCJ, respondent. After having considered the
pleadings, state court records, and relief sought by petitioner,
the court has concluded that the petition should be denied.

### I. FACTUAL AND PROCEDURAL HISTORY

On January 12, 2009, a jury in Tarrant County, Texas, Case
No. 1132560R, found petitioner guilty of capital murder and, the
state having waived the death penalty, the trial court assessed
his punishment at life imprisonment without parole. (Clerk's R.
199, 123.) Petitioner's conviction was affirmed on appeal and the
Texas Court of Criminal Appeals refused his petition for

discretionary review. (Docket Sheet 1-2.) Petitioner also sought postconviction state habeas-corpus relief by challenging his conviction in a state habeas application, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (SHR02 2-31 & Action Taken.) This federal petition followed.

The state appellate court summarized the factual background of the case as follows:

> Eric Witt was a drug dealer in the Como area of Fort Worth. He was at his home one evening with his friend Kretearria Porter when [petitioner] came over, purchased some drugs from Witt, and left. Another man showed up to buy drugs after [petitioner] left. As the man was leaving Witt's house, two men carrying guns forced their way inside. The first man carried a black gun, and the second man carried a silver gun; both men had bandanas covering their faces below their eyes. The first man shot Witt in the hand as he was trying to shut the door on the men, and Witt fell to the ground.
>
> One of the men ordered Porter to lay on the floor. The man with the silver gun asked Witt, "E, where's the dope at?" Witt told him it was in a cracker box in the kitchen. One of the men searched Witt's pockets as he lay on the floor. The man with the black gun stood over Witt and shot Witt in the back of the head as they were leaving. The two men left, and the man who had just purchased drugs fled out the front door after them. Witt died from the gunshot wound to his head.
>
> Police eventually arrested James Phillips, Kenneth Francis,[1] Nathaniel Baldwin, and [petitioner] in connection with Witt's murder. Francis admitted to participating in the robbery, and he told detectives that [petitioner] was the robber who shot Witt. Phillips also admitted to participating in the robbery

---

[1]Kenneth Francis's last name is spelled as Francis and Frances in the state court records. The court uses Francis unless otherwise spelled as Frances in quoted materials.

and told detectives that [petitioner] was the shooter.

At [petitioner]'s trial, Francis testified that
Phillips, Baldwin, and [petitioner] had planned to rob
Witt and that Francis's role was to go to Witt's house
to buy drugs so that he could determine how many people
were inside Witt's house. By the time Francis got to
Witt's house, Phillips and [petitioner] were already
inside; Francis saw Witt and Porter laying on the
floor, Phillips standing over Witt with a chrome gun,
and [petitioner] in the kitchen with a black gun. Witt
was pleading for them not to kill him and was saying,
"It's in the box. It's in the box." Francis ran back to
his car and heard a gunshot. Sometime after the
robbery, Francis saw [petitioner] and asked him why he
had shot Witt. [Petitioner] told him, "When I shot E,
[Phillips] threw up." Francis testified that he had
agreed to testify for the State in exchange for an
eight-year sentence for conspiracy to commit robbery.

Phillips testified that on the day of Witt's
murder, Baldwin had showed up at his house and had told
him, "Let's go get this money." Phillips did not know
exactly what he was talking about, but he knew that
Baldwin was asking if he wanted to go rob someone.
Phillips got in the car with Baldwin, [petitioner], and
Francis and learned that they planned to rob Witt.
Phillips testified that Baldwin's role in the robbery
was "[j]ust getting the door open." According to
Phillips, Baldwin approached Witt's house first under
the guise of purchasing drugs, and while Baldwin was
inside, [petitioner] "bust[ed] up in there." Phillips
said that he and Francis were still outside when they
heard a gunshot. Phillips went inside and saw that Witt
had been shot in the hand. Phillips started grabbing
money and drugs. He was carrying a chrome-plated
revolver. He testified that he ran to his mother's
house after the robbery and threw up at her house from
running so hard. Phillips explained that he had agreed
to testify for the State in exchange for a
twenty-five-year sentence for capital murder.

LaTonia Clark testified that Francis was her
boyfriend when Witt was murdered. On the night of
Witt's murder, Clark heard Phillips tell Francis that
he wanted to rob Witt because he and [petitioner] had
seen "a lot of money or drugs" at Witt's house. Later
that night, Francis was taking a bath when he told

3

Clark about the robbery. He was crying, and he told
Clark that [petitioner] had shot Witt in the back of
the head and that Phillips had thrown up in Witt's
house.

Lee Hall testified that he lives in Como and knows
[petitioner], Phillips, Francis, and Baldwin. After
Witt's murder, Hall overheard a conversation between
[petitioner] and a man ["Fat Roy"] who lives next door
to Hall's grandmother. [Petitioner] was talking about
Phillips and said, "I hope the boy can hold water. I
ain't never did no crime. I ain't never did no dirt
with him. I just hope he don't snitch on me." Hall
explained that when [petitioner] said he "ain't never
did no dirt with [Phillips]," [petitioner] meant that
he had never committed a crime with Phillips. Hall also
overheard [petitioner] tell the man, "Man, I should
have murked [Phillips]," which is a street term for
murder.

Donald Coleman testified that he had a sexual
relationship with Phillips at the time of Witt's murder
and that Phillips had told him that Phillips,
[petitioner], and Francis robbed "the dope man."
Coleman testified that Phillips had told him that
[petitioner] shot Witt during the robbery.

Marquies Amos testified that he knows Phillips,
Francis, Baldwin, and [petitioner] and that he had
known Witt. Amos said that Phillips had told him that
[petitioner] shot Witt during the robbery. Amos also
testified that [petitioner] confessed to him that he
had shot Witt because, during the robbery, Phillips
was calling [petitioner] by his name in front of Witt and
because Witt was telling [petitioner], "I know where
y'all live." Amos agreed to testify for the State in
exchange for a plea agreement with his brother
regarding unrelated charges.

(SHR02 at 317-20.)

## II. ISSUES

Petitioner raises the following grounds for habeas relief:

(1)   his right to due process was violated due to the
      state's use of material false testimony at trial;

4

(2)  his right to remain silent was violated by the
     prosecution's comment on his failure to testify;

(3)  he received ineffective assistance of trial
     counsel because counsel failed to call his alibi
     witnesses, Ronald and Sheree Hawkins; and

(4)  he received ineffective assistance of trial
     counsel because counsel failed to conduct an
     adequate investigation and present evidence
     favorable to petitioner's alibi.

(Pet. 6-7.)

### III. RULE 5 STATEMENT

Respondent does not allege that the petition is barred by
successiveness, the federal statute of limitations, or a failure
to exhaust state-court remedies. (Resp't's Answer 6.)

### IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened
standard of review provided for by the Anti-Terrorism and
Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the
Act, a writ of habeas corpus should be granted only if a state
court arrives at a decision that is contrary to or an
unreasonable application of clearly established federal law as
determined by the United States Supreme Court or that is based on
an unreasonable determination of the facts in light of the record
before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v.
Richter,* 562 U.S. 86, 100-01 (2011).

The statute also requires that federal courts give great
deference to a state court's factual findings. *Hill v. Johnson,*

210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S. 362, 399 (2000). Additionally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* 138 S. Ct. 1188, 1191-92 (2018).

## V. DISCUSSION

### A. Material False Testimony

Under his first ground, petitioner claims that his Fifth Amendment right to due process was violated by the prosecution's knowing use of "material false testimony" at trial and/or failure to correct the false testimony. (Pet. 6; Pet'r's Mem. 5-26.) The

state's knowing use or failure to correct materially false testimony constitutes a due process violation. *See Giglio v. United States,* 405 U.S. 150, 153-54 (1972); *Napue v. Illinois,* 360 U.S. 264, 269 (1959).

Petitioner asserts that Lee Hall, Marquies Amos, and Kenneth Francis testified falsely and that the state knew their testimony was false and failed to correct it. (Pet'r's Mem. 7.) In support, petitioner presented the affidavits/unsworn declarations of Hall and Francis. (SHR02 89, 104.) The state investigated petitioner's allegations and, in response, submitted affidavits by two state investigators, Richard Nutt and J. Bryan Moody, and a second affidavit by Francis asserting that he was threatened to sign the affidavit by petitioner, which the state court found credible. (SHR02 290-93.)

The state habeas court adopted and entered the following proposed findings of fact relevant to the issue, which were later adopted by the Texas Court of Criminal Appeals:

1.    [Petitioner] alleges that the State presented false evidence that Lee Hall overheard [petitioner] admitting to "Fat Roy" that he was involved in the shooting of the victim.

2.    Lee Hall testified that [petitioner] told "Fat Roy" he was worried about Phillips snitching on [petitioner] and that he should have killed Phillips to keep him quiet.

3.    Lee Hall did not testify about what date he was present for the conversation between [petitioner] and "Fat Roy."

4.  [Petitioner] presents no evidence to support his claim that "Fat Roy" was incarcerated during the time period that Hall testified he overheard the conversation.

5.  Investigators Richard Nutt and J. Bryan Moody met with Lee Hall on April 4, 2016.

6.  [Petitioner] filed an unsworn declaration signed by Hall stating that he gave false testimony at [petitioner]'s trial.

7.  [Petitioner] threatened Hall into signing the unsworn declaration.

    . . .

12. Hall's unsworn declaration filed by [petitioner] is not credible and was signed under duress.

13. Amos testified that both Phillips and [petitioner] told him [petitioner] shot the victim.

14. Amos did not testify about what date [petitioner] admitting [sic] committing the offense to him.

15. Amos did not know the exact date that he had his conversation with [petitioner].

16. [Petitioner] claims that he was in custody at the specific time Amos testified he admitted committing the offense to him outside of a store.

17. [Petitioner] presents no evidence to support his claim that he was in custody.

18. [Petitioner] filed an unsworn declaration from "Kenneth Francis" stating that he gave false testimony against [petitioner].

19. Kenneth Frances, Jr., intentionally misspelled his name as "Francis" in the unsworn declaration that he signed for [petitioner] because he did not want to sign it.

20. Frances signed the unsworn declaration [petitioner] filed under duress.

21.  Frances' unsworn declaration filed by [petitioner] is not credible.

22.  The testimony Frances gave at [petitioner]'s trial was true and correct.

23.  Frances has not changed his trial testimony.

(SHR02 264-66 (record citations omitted).)

Based on its factual findings and relying solely on state law, the state habeas court entered the following legal conclusions:

1.  "The Due Process Clause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly."

2.  The testimony need only be "false" and not perjury to constitute a due process violation.

3.  The test is whether the testimony, considered as a whole, "gives the trier of fact a false impression."

4.  Regardless of whether the use of false testimony was knowing or unknowing, "the 'applicant has the burden to prove by a preponderance of the evidence that the error contributed to his conviction or punishment.'"

5.  [Petitioner] has failed to prove that the State either knowingly or unknowingly presented false evidence.

6.  [Petitioner] has failed to prove that Lee Hall testified falsely at trial.

7.  [Petitioner] has failed to prove that Marquies Amos testified falsely at trial.

8.  [Petitioner] has failed to prove that Kenneth Frances, Jr., testified falsely at trial.

9.  [Petitioner] has failed to prove that false

testimony was used to obtain a conviction.

10. [Petitioner] has failed to prove that he was denied due process.

(Id. at 266 (citations omitted).)

Petitioner also presented in state court the affidavit/ unsworn declaration of Clarence McGee stating that Phillips testified falsely at trial that petitioner was the shooter. (Id. at 221.) The state habeas court made no express findings in this regard, however this court may imply fact and credibility findings consistent with the state court's denial of habeas relief. *See Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997). The state court's denial of habeas relief implies a finding that McGee's affidavit is not credible.

Petitioner fails to rebut the presumption that the state court's express and implied factual findings, including the court's credibility determinations, are correct.[2] Thus, deferring to those findings, the state court's decision is consistent, in

---

[2]Petitioner asserts that the presumption of correctness should not apply because the correct procedure was not followed by the state habeas judge, who did not preside at his trial, in making credibility determinations because he could not compare the affidavits/unsworn declarations with trial testimony and did not conduct a live evidentiary hearing to determine for himself whether the affidavits/unsworn declarations were "worthy of belief." (Pet'r's Mem. 12-14.) However, petitioner relies upon pre-AEDPA case law in support of his argument. In contrast to pre-AEDPA law, deference to a state court's factual determinations is not dependent upon the quality of the state court's evidentiary hearing or whether the same judge presided at trial and on state habeas review. *See Valdez v. Cockrell,* 274 F.3d 941, 951 (5th Cir.2001). Under the AEDPA, a federal court must afford the state's factual findings, including its findings on credibility, the presumption of correctness unless the findings are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

relevant part, with Supreme Court law on the issue, and its
application of that law is not objectively unreasonable.[3]
Recanting affidavits and witnesses are viewed with extreme
suspicion by the courts, especially, as in this case, where they
are recanting earlier testimony. *See Spence v. Johnson,* 80 F.3d
989, 1003 (5th Cir. 1996); *May v. Collins,* 955 F.2d 299, 314 (5th
Cir. 1992). Further, in light of the apparent motive by Hall and
Francis to recant their trial testimony, the court agrees that
the recanting statements do not prove that their trial testimony
was false.

### 2. Right to Remain Silent

Under his second ground, petitioner claims that his Fifth
Amendment right to remain silent was violated by the
prosecution's comment on his failure to testify during closing
argument in the guilt/innocence phase of trial. (Pet. 6.) The
Fifth Amendment prohibits a prosecutor from commenting on a
defendant's failure to testify, *Griffin v. California,* 380 U.S.
609, 615 (1965), if "the prosecutor's manifest intent in making
the remark must have been to comment on the defendant's silence,
or the character of the remark must have been such that the jury
would naturally and necessarily construe it as a comment on the

---

[3]No Supreme Court case holds that the state's unknowing use of false
testimony violates the Due Process Clause. *See Piere v. Vannoy,* 891 F.3d 224,
227-28 (5th Cir. 2018). Thus, to the extent petitioner argued that the state
unknowingly presented false testimony, he does not allege a federal
constitutional error. *Id.* at 229.

defendant's silence." *Jackson v. Johnson,* 194 F.3d 641, 652 (5th Cir. 1999). "The prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark." *United States v. Grosz,* 76 F.3d 1318, 1326 (5th Cir. 1996). As for whether a jury would naturally and necessarily construe a remark as a comment on the defendant's failure to testify, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so." *Id.* (quoting *United States v. Collins,* 972 F.2d 1385, 1406 (5th Cir. 1992)). Additionally, challenged comments are evaluated in the context of the trial within which they are made. *United States v. Robinson,* 485 U.S. 25, 33 (1988).

Petitioner complains of two instances, which were addressed on direct appeal. The state appellate court, relying solely on state case and statutory law, addressed the claim as follows:

> [Petitioner] argues that the State twice commented on his failure to testify during its closing argument at the guilt-innocence stage of trial and that the trial court erred by overruling both of his objections to the comments. [Petitioner] claims that this error violated his state and federal constitutional rights against self-incrimination and article 38.08 of the code of criminal procedure.

### A. The Complained-Of Comments

> During its closing arguments, the State argued that [Petitioner]'s alibi witnesses had lied on the witness stand. The State then stated,
>
> > And [petitioner's alibi witnesses]

12

testified that [petitioner] was with them after [six] o'clock all night long. That's what the testimony was.

But [petitioner] didn't know that we knew he went back to the scene, so he had to shift gears a little bit. And now all of a sudden, he went back to the scene. Yes, he admits he was there. "I was there, but if I was there"–

[Petitioner] objected that this was an improper comment on his failure to testify, to which the State replied, "Defense counsel, Your Honor, is who I'm referring to." The trial court overruled the objection. The State continued, "This is what it comes down to. You heard the testimony on Friday. You know they were lying, okay? And if he's going to get them to come here and lie to you, it's because he is guilty of the offense."

Later in its closing argument, the State argued,

And their defense theory about Como turning [petitioner] in was shot out of the water on day two. And now Friday afternoon to Monday morning, the alibi witnesses that we called up here were shot out of the water. That is not true.

If he was going to lie to you about that, then he's guilty of capital murder.

Jackson again objected that this was a comment on his failure to testify, and the trial court overruled his objection.

### B. Law on Comment on Failure to Testify

A comment on an accused's failure to testify violates the accused's state and federal constitutional privileges against self-incrimination. In addition, the code of criminal procedure provides that a defendant's failure to testify on his own behalf may not be held against him and that counsel may not allude to the defendant's failure to testify.

To determine whether a comment violates a

defendant's right against self-incrimination or article
38.08, we must decide whether the language used was
manifestly intended or was of such a character that the
jury naturally and necessarily would have considered it
to be a comment on the defendant's failure to testify.
The offending language must be viewed from the jury's
standpoint, and the implication that the comment
referred to the accused's failure to testify must be
clear. A mere indirect or implied allusion to the
defendant's failure to testify does not violate the
accused's right to remain silent. A statement
referencing evidence that can come only from the
defendant is, however, a direct comment on the
defendant's failure to testify.

### C. State Did Not Comment on [Petitioner]'s Failure to Testify

In the instant case, a review of [petitioner]'s
defensive theory and closing argument provides some
insight into the complained-of comments made by the
State in its closing argument. At trial, [petitioner]
called Brandi Hawkins and Andre Hawkins to testify on
his behalf. Brandi is the mother of [petitioner]'s
girlfriend, and Andre is the brother of [petitioner]'s
girlfriend. Both testified that [petitioner] was at
their house the entire evening of Witt's murder and
that [petitioner] had slept there that night. On
cross-examination, Brandi admitted that [petitioner]
had sent her a handwritten affidavit to sign, stating
that [petitioner] was at her house on the night of
Witt's murder. In rebuttal, the State called two
witnesses to testify that they had seen [petitioner] in
the crowd of bystanders at Witt's house after Witt's
murder, contradicting Brandi's and Andre's testimony.
During defense counsel's closing argument, he addressed
the State's rebuttal and said that Brandi Hawkins's
testimony was discredited. He argued,

> But I'm not going to stand in front of
> you and argue that [petitioner] didn't go to
> [Witt's] house. I believe he did.

> But if he went to the house, his
> interest in this is no different than the
> interest of everybody else at the house about
> what happened.

When the State commented later in its closing argument that [petitioner] "admits he was there [at Witt's house after the murder]. 'I was there, but if I was there,' " the State was clearly addressing defense counsel's closing argument, not any failure to testify on [petitioner]'s part. The State's comment was also addressing [petitioner]'s defensive theory and the impeachment of his alibi witnesses. This same reasoning applies to the second complained-of argument-that [petitioner] had lied about his alibi defense. The State was summarizing the evidence and addressing testimony from [petitioner]'s alibi witnesses and the fact that [petitioner] had written affidavits for them to sign, stating that he was with them on the night of Witt's murder.

Viewing the State's comments from the jury's standpoint, we hold that the complained-of comments did not naturally and necessarily refer to [petitioner]'s failure to testify; rather, they were proper comments on [petitioner]'s defensive theory and testimony from his alibi witnesses and were answers to defense counsel's arguments. The complained-of comments were not manifestly intended or of such a character that the jury naturally and necessarily would have considered them to be comments on [petitioner]'s failure to testify.

## D. Alternatively, Any Error Was Harmless

Alternatively, even assuming the State's arguments were comments on [petitioner]'s failure to testify, we conclude any error in the trial court's overruling [petitioner]'s objections was harmless. Under Texas Rule of Appellate Procedure 44.2(a), upon determining constitutional error exists, we should reverse unless we determine beyond a reasonable doubt that the error did not contribute to the defendant's conviction or punishment. Our primary inquiry is what effect the error had, or reasonably may have had, on the jury's decision. "We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would likely encourage the State to repeat it with impunity."

As we explained above, a review of the State's

entire argument, [petitioner]'s closing argument, and [petitioner]'s defensive theories reveals that the State was referring to testimony elicited from [petitioner]'s alibi witnesses and defense counsel's closing argument. Our neutral, impartial review of the record further demonstrates that the comment was a small part of the State's argument and was not emphasized or mentioned again and that the jury likely did not attribute much, if any, weight to the error. Although the trial court overruled [petitioner]'s objections, the court read its charge to the jury prior to closing arguments. The charge included an instruction not to consider [petitioner]'s failure to testify, and the jury is presumed to follow this instruction.

After carefully reviewing the record and performing the harm analysis required under rule 44.2(a), we alternatively hold that if the trial court erred by overruling [petitioner]'s objection to the State's comments at issue, then beyond a reasonable doubt, such error did not contribute to [petitioner]'s conviction or punishment.

(Mem. Op. 19-26 (footnote and citations omitted).)

To the extent petitioner argues that the comments violate Texas Rule of Criminal Procedure article 38.08, his claim is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). To the extent he argues that the comments violate the Fifth Amendment, the claim fails. State law on the matter comports with Supreme Court law on the issue, and, in view of the content and context in the record as a whole, the state court's determination is not objectively unreasonable.

## C. Ineffective Assistance of Trial Counsel

Under his third and fourth grounds, petitioner claims that

he received ineffective assistance of trial counsel because counsel failed to investigate and interview witnesses. (Pet. 7.) A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the ineffective-assistance claims on the merits, this court must review petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this court is not "whether

defense counsel's performance fell below *Strickland*'s standard";
it is "whether the state court's application of the *Strickland*
standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86,
101, 105 (2011).

In his state habeas application, petitioner provided the
following supporting facts relevant here (all spelling,
grammatical, and/or punctuation errors are in the original):

> (1) trial counsel fail to conduct an adequate
> investigation, whereby it would have been discovered,
> that the [petitioner] had underwent a residue test and
> polygraph examination, that was conducted by the Fort
> Worth Police Department, and of which [petitioner] had
> passed, and would have further discovered, that the
> Fort Worth Police Department recovered a .38 caliber
> revolver from [petitioner]'s residents, which could
> have been compared to the bullet fragments, that were
> recovered from the deceased for the purpose of
> determining whether this was the gun, that the deceased
> was shot with, or whether the gun had been fired. Such
> finding would, have been consisted with the testimony
> of the State's witness regarding the types of guns,
> that fire the type of bullet, that the deceased was
> shot with, since both types of a weapons, that are
> distinguished amongst themselves as an automatic,
> versus revolver.

> (2) trial counsel fail to conduct an adequate
> investigation, whereby it would have been discovered,
> as to the role, if any, [petitioner] played in the
> alleged robbery and murder of Eric Witt, had trial
> counsel interviewed Nathaniel Baldwin, an alleged
> co-conspirator to the offense, and person, that was not
> charged in this case by the State, nor called as a
> witness. Trial counsel never interviewed this witness,
> nor investigated any statements, and/or police reports
> regarding this individual.

> (3) trial counsel fail to conduct an adequate
> investigation, and/or present evidence favorable to
> [petitioner]'s alibi defense, by calling witnesses
> Sheree Hawkins, whom's Affidavit was on file and

18

presented, and <u>Ronald Hawkins</u>, whom would have
testified, that he went by the house, and informed
[petitioner] and Brandy Hawkins of the incident, and
after informing them of the incident, Sherre Hawkins,
him, and [petitioner] went to the scene of the offense.

(4) trial counsel fail to present evidence
favorable to the case, by calling <u>Terrence Norton</u> as
witness on behalf of the defense, whereby this witness,
had evidence and/or testimony, that would have casted
doubt on the State's case, as [petitioner] being the
shooter.

(5) trial counsel fail to present evidence
favorable to the case, by calling <u>Tawayna Washington</u> as
a witness on behalf of the defense, whereby this
witness, had evidence and/or testimony, that would have
casted doubt on State's casa against [petitioner] as
being the person, that shot Eric Witt.

(6) trial counsel fail to adequately investigate
and interview the State's witness <u>Marquis Amos</u>, whereby
had trial counsel done so, he would have learned, that
on the date in question, that he allegedly had a
conversation with [petitioner], [petitioner] was in
police custody; trial counsel did not ascertain the
specific date of the alleged conversation, or whether
the Store where the alleged conversation took place was
open for business.

(SHR02 27 (emphasis added).[4])

Petitioner's lead trial counsel, William S. Harris, licensed

to practice law over 35 years and board-certified in criminal

law, filed an affidavit in the state habeas proceeding responding

to petitioner's allegations as follows (any spelling,

grammatical, and /or punctuation errors are in the original):

[Petitioner] alleges I performed an inadequate
investigation because I did not find out that he had

---

[4]In his state habeas application, petitioner raised additional claims
that are not reasserted in this federal petition; thus, those claims are not
addressed.

taken a polygraph and been tested for gunshot residue. This is not true. I knew about both tests, but they were irrelevant to this case. The gunshot residue tests were performed several days after this murder in relation to another murder that occurred near his house. With bathing and hand washing over several days there is virtually no likelihood that gunshot residue from the Eric Witt murder, if it had been on [petitioner] hands after the shooting would, still be there. Further, the polygraph, which was inadmissible, only related to the second murder.

[Petitioner] also alleges that I did not discover that a pistol had been recovered from his home. I did have that information, it was included in the state's discovery. The pistol was of the same caliber as the pistol that killed Eric Witt, but the state's ballistics report indicated that it was not the murder weapon. Moreover, introduction of the fact that [petitioner] possessed such a pistol would not have excluded him from being a party to the murder or having committed the murder with a different gun.

[Petitioner] complains of my failure to call <u>Sheree Hawkins</u> as an alibi witness. I interviewed Ms. Hawkins, but she contradicted the other alibi witnesses who testified that [petitioner] did not leave their home after they learned of the shooting. I also knew she would appear as a witness in jail clothing and that would have diminished her credibility. Had [petitioner] informed me that he had in fact gone with her to the scene later in the evening, I might have reconsidered calling her, but he did not so inform me.

[[Petitioner] maintains I was ineffective in not calling <u>[Terrence] Norton</u> after interviewing him. . . . Mr. Norton's original signed statement alleged that [petitioner] admitted to him in jail that he and James Phillips had robbed Eric Witt and Mr. Phillips shot Mr. Witt. He also said [petitioner] told him that if he and Mr. Phillips kept their mouths shut they would get away with it. Obviously, this testimony would not have been helpful to [petitioner]'s case. . . . [Petitioner] alleges that I interviewed the witness, but I do not recall doing so. In addition, I have reviewed the trial record and it suggests that I did not interview the witness. There is no evidence that Norton "backed off his testimony." The only suggestion that any of his

statement contains *Brady* material was made by the prosecution. On reviewing the statement, I did not think anything in it was helpful to [petitioner]. The state rested and did not call Mr. Norton because the trial court forced their hand and was not willing to wait for further argument or case law from the state's appellate section on their argument that they should be allowed to call him even though they had not given the defense adequate notice.]

[Petitioner] complains that I did not call as a witness <u>Tewayne Washington</u>. Mr. Washington had given a statement to the police that he had heard "Peddie", Eric Witt's cousin, say that he and Eric Witt's brother had killed Demarcus Lenear because he had killed Eric Witt. No other evidence in my investigation or the state's investigation, which I had access to, supported the theory that Demarcus Lenear killed Eric Witt or that "Peddie" had killed Lenear. In addition, Mr. Washington's testimony would have clearly been inadmissible hearsay in this case.

[Petitioner] complains that I did not interview or call to the stand <u>Marquis Amos</u> and I did not check to see what specific date he allegedly heard [petitioner] admit participating in the murder so I could determine whether the store he said he met [petitioner] at was open. Mr. Amos testified as a state's witness. I had the statement that he had given the state before trial. He testified, over objection, that James Phillips had told him that [petitioner] killed Eric Witt. He then testified that he met [petitioner] outside a store in Fort Worth. He said that [petitioner] admitted that he had killed Eric Witt because Witt said he knew who [petitioner] was. I cross examined Mr. Amos. He could not say how long after he talked to James Phillips, he talked to [petitioner]. I did not ask him what day he talked to [petitioner], because his answer suggested he did not know the date. Moreover, since he said the meeting took place outside the store and that he saw [petitioner] while they were in their respective cars, whether the store was open was irrelevant. Instead, I reinforced the defensive theme that we were pursuing, that he was a long time member of the Como neighborhood and that the neighborhood was very tight and clannish. This had been [petitioner]'s explanation for why the residents were placing the blame on him because he was an outsider who had moved to Como from New Orleans

after Hurricane Katrina.

(Id. at 61-62 (emphasis added).[5])

Based on the record and the submitted affidavits, the state habeas court entered factual findings consistent with counsel's affidavit, too numerous to list here. (Id. at 251, 254-57.) The court also entered findings that counsel was appointed an investigator who conducted over 124 hours of work on petitioner's case; that the investigator attempted to locate Nathaniel Baldwin, apparently to no avail; and that petitioner presented no credible evidence as to what counsel would have discovered had they done additional investigation. (Id. at 253.) Based on its findings, and applying the *Strickland* standard, the state court concluded that counsel's decisions not to call the witnesses was the result of reasonable trial strategy and that petitioner failed to show a reasonable probability that the result of the proceeding would have been different had counsel done more investigation. (Id. at 260-61.)

The state court applied the proper standard and, deferring to the state court's factual findings, the court's application of that standard is not objectively unreasonable. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

---

[5]Counsel who assisted Harris, Navid Alband, also filed an affidavit in the state habeas proceeding testifying similarly. (Id. at 196-200.)

*Strickland,* 466 U.S. at 690-01. Contrary to petitioner's assertion, it appears counsel conducted a thorough pretrial investigation and formulated a strategy that was reasonable based on the information known to counsel at the time. Counsel was aware of the results of the gun residue and polygraph tests and the gun found in petitioner's residence. And, save for the affidavits/unsworn statements from Sheree Hawkins, Lee Hall, Kenneth Francis, and Clarence McGee, which were found to lack credibility by the state courts, petitioner submitted no affidavits from other witnesses or alleged with specificity what additional investigation would have revealed. *See Druery v. Thaler,* 647 F.3d 535, 541 (5th Cir. 2011). Conclusory allegations of counsel's failure to investigate and/or call witnesses are insufficient to demonstrate ineffective assistance. *See United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989).

Further, it is well established that claims of uncalled witnesses are disfavored in federal habeas-corpus review because allegations of what a witness would have testified to is speculative, especially if the claim is unsupported by evidence indicating the witness's willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman,* 496 F.3d 419, 428 (5th Cir. 2007). Moreover, the decision whether to present a witness is considered to be essentially strategic, and such decisions by counsel are virtually unchallengeable and

23

generally do not provide a basis for habeas-corpus relief. *See Strickland,* 466 U.S. at 689; *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985).

For the reasons discussed herein,

The court ORDERS that the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied.

SIGNED January \_\_\_**11**\_\_\_, 2019.

_____
JOHN MCBRIDE
UNITED STATES DISTRICT JUDGE

24